[No. B120266. Second Dist., Div. Four. Aug. 5, 1999.]

RICHARD ZIMAN et al., Plaintiffs and Appellants, v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant and
Respondent.

1384

**COUNSEL**

Gernsbacher & McGarrigle, David L. Gernsbacher, Patrick C. McGarrigle, Paul B. Beach and Philip A. Zampiello for Plaintiffs and Appellants.

Hager & Dowling, John V. Hager and Jeffrey D. Lim for Defendant and Respondent.

**OPINION**

**EPSTEIN, J.**—The issue in this case is whether respondent insurer was obligated to defend its insureds in a third party action for copyright infringement arising from the display of an allegedly unauthorized copy of a painting in the lobby of a building owned by the insureds. The painting in question was hung in the lobby while the insureds were showing the building to commercial real estate brokers in an effort to lease offices there. Appellants therefore claim that the insurer had a duty to defend under the advertising injury clause in their commercial general liability policy.

The trial court granted summary judgment to the insurer. We affirm. There was no duty to defend because the activities of the appellants did not constitute advertising under the terms of the policy.

### FACTUAL AND PROCEDURAL SUMMARY

Appellant Arden Realty Group, Inc. (Arden) owns and manages commercial office buildings. Appellants Richard Ziman and Victor Coleman are

principals of Arden. In the spring of 1995, Arden acquired a commercial office building in Encino. Arden was insured by appellant, Fireman's Fund Insurance Company (Fireman's). In an effort to obtain additional tenants, Arden planned to solicit new business through a brokers' open house in the lobby of the building.

In late April 1995, Leslie Tenney, an employee of Arden's, contacted Jillian Coldiron, an art broker. Ms. Tenney told Ms. Coldiron that "the building was having an opening for brokers to lease space for the building and that there was no artwork in the lobby. . . . Ms. Tenney was responsible for obtaining artwork for the lobby." Ms. Coldiron thought that a painting by George Kleiman would be appropriate for appellant's lobby. She contacted Mr. Kleiman, who said that he was willing to have the painting placed in the lobby, but only if there was a good possibility that Arden would buy the painting if it worked well.

Ms. Coldiron explained these terms to Ms. Tenney and said that the painting was expensive. Ms. Tenney replied that there was a possibility of a sale since Arden was spending money on improving the lobby. She said that the brokers' opening was going to take place in a few days and that they needed the painting right away. Mr. Kleiman's painting, which was registered with the United States Copyright Office, was hung in the lobby as soon as possible.

After the Kleiman painting had hung in the lobby for several months, Ms. Tenney told Ms. Coldiron that it was too expensive, and that the owners of the building knew an artist who was painting a picture for the space. When Ms. Coldiron went to the building in September 1995 to pick up the Kleiman painting, she noticed a copy of it hanging in the same location. She told Mr. Kleiman about the copy.

In October 1996, Mr. Kleiman sued Barry Keyes, Richard Ziman, Victor Coleman, and Arden in the United States District Court for copyright infringement, fraud, negligent misrepresentation, and unfair competition. He alleged that Mr. Keyes painted a copy of the original painting for Mr. Ziman, Mr. Coleman, and Arden, for display in the lobby of the building. He alleged that the copy has the same shapes, colors and unique size as the original painting and was displayed in the same location in the building lobby where the original had been displayed.

Mr. Kleiman's complaint alleged that Arden had promised that if Kleiman allowed Arden to hang his original painting in the lobby of the building for a trial period without compensation, Arden would purchase the painting if it

worked well with the lobby. As stated in the complaint, "Arden made the promise to Kleiman intending to cause Kleiman to deliver and hang the Painting in the lobby of the Building. Arden was going to have a reception in the lobby of the building and wanted Kleiman's painting to be displayed during the reception."

Arden tendered the Kleiman lawsuit to its insurer, Fireman's, which had issued a general comprehensive liability policy for the relevant time period. (The policy.) The advertising injury coverage provision promises: "We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this coverage part applies. We will have the right and duty to defend any **suit** seeking those damages. We may at our discretion investigate any **occurrence** or offense and settle any claim or **suit** that may result." (Boldface in original.) Advertising injury coverage applies to: "**Advertising injury** caused by an offense committed in the course of advertising your goods, products or services." (Boldface in original.) The policy defines "**advertising injury**" as an "injury arising out of one or more of the following offenses: [¶] d. Infringement of copyright, title or slogan." (Boldface in original.)

Fireman's initially denied coverage and refused to provide a defense. It concluded that the conduct alleged by Kleiman to have occurred was not covered by the advertising provision of the policy. Fireman's added that it would "review and evaluate any additional information that you may have as to the applicability of coverage under the provisions of the policy."

In response, Paul Beach, an attorney for Arden, advised a Fireman's representative that Kleiman's claims related to a painting which had been obtained from an artist for display during a brokers' open house in the lobby of the building. Mr. Beach also transmitted additional information to Fireman's, including copies of requests for production of documents propounded by Kleiman in the federal copyright action seeking documents relating to any improvement work in the lobby of the building or anything having to do with the brokers' open house.

An adjuster for Fireman's wrote to Mr. Beach acknowledging receipt of his letters regarding this coverage issue. He stated that having re-reviewed the facts regarding the Kleiman action, Fireman's had again concluded that there was no potential coverage for the reasons detailed in the June 1996 letter. "It is Fireman's Fund's position that the copyright alleged in the Complaint does not arise out of any advertising activity of the insured."

Shortly after that, Richard Ziman, Victor Coleman, and Arden sued Fireman's for breach of contract, tortious breach of the covenant of good

faith and fair dealing, and constructive fraud. After filing an answer, Fireman's moved for summary judgment on the ground that there was no potential for coverage, and hence no duty to defend, under the advertising injury provision of the policy. It contended that the alleged copyright infringement had nothing to do with any advertising by Arden.

Arden opposed the motion, submitting declarations from its principals and others involved in commercial real estate to the effect that commercial office space is often "advertised" through brokers' open houses held in the lobby of the building where space is available.

The trial court granted Fireman's motion in its entirety. Arden objected to the proposed order granting summary judgment prepared by counsel for Fireman's because it failed to state the specific reasons for the ruling and did not refer to the evidence in support of the ruling. Later, the trial court signed a second proposed order prepared by counsel for Fireman's and entered judgment in favor of Fireman's.

Arden moved for reconsideration on the ground that the order signed by the trial court granting summary judgment did not clearly state the complete basis for the trial court's ruling, including the evidence it relied upon. The trial court then signed a revised order granting summary judgment, prepared by counsel for Fireman's, which included the grounds for the ruling in greater detail.

Arden again moved for reconsideration, on the ground that in the interim, it had obtained a letter from Fireman's admitting that the policy exclusion relied upon by the trial court in granting summary judgment did not apply. Fireman's opposed the motion. The trial court denied the motion. The trial court entered judgment for Fireman's, and Arden has appealed from the judgment and the orders denying the motions for reconsideration.

DISCUSSION

"Summary judgment is appropriate only where no material issue of fact exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. After examining the facts before the trial judge on a summary judgment motion, an appellate court independently determines their effect as a matter of law. [Citation.] Where, as here, 'the facts are undisputed, the issue is one of law and the "appellate court is free to draw its own conclusions of law from the undisputed facts." [Citations.]' (*Suburban Motors, Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359 [268 Cal.Rptr. 16].)" (*Long* v. *City of Los Angeles* (1998) 68 Cal.App.4th 782, 785 [80 Cal.Rptr.2d 583.)

■ "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*).) As we said in *Gray*, 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' (*Id.* at p. 275, italics in original.) Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.] [¶] The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (*Gray, supra,* 65 Cal.2d at p. 276.)" (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].)

■ "[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' [Citation.]" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

While the phrase "advertising injury" is defined in the policy, "advertising" is not. In *Bank of the West*, the Supreme Court touched on the meaning of this term: "Although we need not address the issue, we note that courts have disagreed on the question of what constitutes 'advertising' for these purposes. Most of the published opinions hold that 'advertising' means widespread promotional activities directed to the public at large. [Citations.] [¶] Of the published opinions, only the courts in *American States Insurance Co.* v. *Canyon Creek* [(N.D.Cal. 1991)] 786 F.Supp. 821, 828, and *John Deere* [*Ins. Co.* v. *Shamrock Industries, Inc.* (D.Minn. 1988)] 696 F.Supp. 434, 440, appear to have held that the term 'advertising' can also encompass personal solicitations." (2 Cal.4th at pp. 1276-1277, fn. 9.)

Arden argues that Fireman's does not dispute that the alleged copyright infringement falls within the advertising injury provision of the policy. But Fireman's argues that the conduct of Arden in relationship to the Kleiman painting did not constitute advertising within the meaning of the policy. It contends: "Examples of covered advertising injury claims might include the copying of protected material for inclusion in handouts or newspaper advertisements. By contrast, a generic painting hanging in a doctor's waiting

room, a lawyer's office, or a business' reception area does not advertise anything. It is a nicety, which may be appreciated by the business' clientele, but does not advertise that the building is for lease. Here, the involved lobby may have looked better because the painting was present, but the act of hanging the copied painting did not advertise that the building was for lease."

■ We agree with Fireman's. Arden used the original Kleiman painting in improvements to the lobby of the building to make it more attractive to brokers invited to receptions with the intent of obtaining additional tenants. In this way, the painting was no different from new furnishings or plants added to the lobby area for the same purpose. The display of the Kleiman painting in itself did not inform persons who entered the lobby that there was space available for lease in the building.

The Kleiman painting was not reproduced in fliers or invitations designed to encourage brokers to attend the receptions held in the lobby. We are not told that it was used in any way to advance Arden's efforts to lease space, other than by hanging on a wall in the lobby.

We conclude that Arden could not reasonably have expected that the display of an unauthorized copy of a painting in the lobby of its building would come within advertising activities covered by their commercial general liability policy. Fireman's was entitled to summary judgment on this basis. In light of this conclusion, we need not reach other arguments raised by the parties.

DISPOSITION

The judgment is affirmed. Respondent to have its costs on appeal.

Vogel (C. S.), P. J., and Curry, J., concurred.

A petition for a rehearing was denied August 25, 1999, and appellants' petition for review by the Supreme Court was denied November 10, 1999.