[No. A092998. First Dist., Div. Five. Sept. 10, 2001.]

EL-COM HARDWARE, INC., et al., Plaintiffs and Appellants, v. FIREMAN'S FUND INSURANCE COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

―――――

*Pursuant to California Rules of Court, rules 976(b) and 976.1, part V. of the Discussion is not certified for publication.

## Counsel

Gauntlett & Associates, David A. Gauntlett and Eric R. Little for Plaintiffs and Appellants.

Sonnenschein, Nath & Rosenthal, Paul E. B. Glad and Donald M. Carley for Defendant and Respondent.

## Opinion

**JONES, P. J.**—Plaintiffs and appellants El-Com Hardware, Inc. (El-Com), Paul Zamberg, and Elie Vrobel appeal a summary judgment granted in favor of defendant and respondent Fireman's Fund Insurance Company on appellants' action for breach of an insurance contract and breach of the covenant of good faith and fair dealing. ▮▮▮ They contend respondent was obligated to defend them under the insurance policy's advertising injury coverage after they were sued in federal court for "trade dress"[1] infringement.

### Background

Appellant El-Com manufacturers, distributes, advertises and sells hardware and fasteners for cases, cabinets, enclosures and exhibits. Its customer base includes consumers, distributors, and dealers. One of its products is an automatically positioned latch assembly. Appellant Zamberg is president of El-Com. Appellant Vrobel is an officer of El-Com.

### I. The Policies

On April 1, 1998, respondent issued a one-year commercial general liability policy to appellants. The policy was renewed the following year, effective April 1, 1999, to April 1, 2000.[2]

Pertinent to this appeal, the policies provided coverage for "Advertising Injury Liability," whereby respondent agreed to "pay those sums that the

---

[1] " 'The "trade dress" of a product is essentially its total image and overall appearance.' " (*Two Pesos, Inc. v. Taco Cabana, Inc.* (1992) 505 U.S. 763, 764, fn. 1 [112 S.Ct. 2753, 2755, 120 L.Ed.2d 615] (*Two Pesos*).) It " 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' [Citations.]" (*Peerless Lighting Corp. v. American Motorists Ins. Co.* (2000) 82 Cal.App.4th 995, 1002, fn. 1 [98 Cal.Rptr.2d 753] (*Peerless*).)

[2] The parties agree that the 1998 policy was actually issued by The American Insurance Company and the 1999 policy was issued by National Surety Corporation. These two companies are apparently among respondent's insurance companies. When appellants tendered their claim for the underlying action to respondent (see, *post*), respondent characterized

insured becomes legally obligated to pay as damages because of . . . advertising injury . . . caused by an offense committed in the course of advertising your goods, products or services." The policy defines "advertising injury" as, inter alia, "injury arising out of one or more of the following offenses: . . . c. Misappropriation of advertising ideas or style of doing business; or d. Infringement of trademark, copyright, title or slogan." The policy does not define "advertising."

## II.   *The Underlying Action*

Penn Fabrication (U.S.A.), Inc. (Penn Fabrication) owns a patent for an automatically positioned latch assembly. On March 8, 1999, Penn Fabrication brought an action in federal court against appellants for misuse of this patented product, which it characterized more simply as a "handle." The first cause of action, for patent infringement, alleged that appellants were "wilfully infringing said Patent by making, using, offering to sell, and selling, automatically positioned latch assemblies, embodying the patented invention . . ."

The second cause of action alleged: "This is an action for unfair competition joined with substantial and related claims under the trademark laws, alleged in the Third Cause of Action."

The second cause of action further alleged: "As a result of organization, and the expenditure of labor, skill, and money, [Penn Fabrication] has acquired the unique design, including the combination of shape, configuration, appearance, color, and distinctive meaning, hereafter called the unique design, of the [latch] handle"; appellants "slavishly copied and appropriated the unique design of the handle, and are selling it in commerce as their own in competition with [Penn Fabrication]"; appellants' acts "are specifically oriented predatory business practices undertaken by [appellants] with the dominant purpose and effect of passing, and palming, off their handle as that of [Penn Fabrication], and of confusing customers as to the source of their handle"; prior to appellants' acts, Penn Fabrication's "unique design of its handle had a distinctive meaning in the minds of purchasers, indicating a handle originating with" Penn Fabrication; and appellants "have passed, and palmed, off their handle as originating with, or being sponsored by, or affiliated with" Penn Fabrication, and have "confused customers as to the source of their handle."

The third cause of action alleged: "This is an action for false designation of origin, false and misleading description of fact, and false and misleading

the policies as ones it had issued. For convenience, respondent will be deemed the issuing insurer.

representation of fact" under section 43(a) of the Trademark Act of 1946, also called the Lanham Act (15 U.S.C. § 1125(a)). It further alleged that in "slavishly copying the unique design of" Penn Fabrication's handle, in selling it, and in "doing the other acts alleged herein," appellants violated the Lanham Act.

The Penn Fabrication action sought injunctive relief and monetary damages on all causes of action. The complaint did not identify appellants' alleged copied handle by model number. It also did not incorporate by reference a photo or drawing of the copied handle or any advertising or promotional material by appellants of the copied handle.

### III. Tender of Defense

On March 26, 1999, appellants, through their broker, tendered defense of the Penn Fabrication action to respondent. On May 14, respondent declined to defend the Penn Fabrication action because the tendered claim was not within the scope of coverage of the insurance policies. Specifically, it concluded that the Penn Fabrication action "did not arise out of [appellants'] advertising activities. There is no causal connection between [appellants'] advertising and the alleged injuries [in the Penn Fabrication action]. A claim for patent infringement does not involve or arise from [appellants'] advertising activities."

On June 30 appellants, through their attorney, asked respondent to reconsider its denial of coverage. They asserted that the factual allegations in the Penn Fabrication action contained a claim for "trade dress" infringement which fell within the policy's coverage for advertising injuries from misappropriation of advertising ideas or style of doing business.

On August 9 respondent, through its coverage counsel, affirmed its denial of a defense. It disputed that the alleged conduct in the Penn Fabrication action was a claim for trademark, or impliedly, trade dress, infringement, but even if it were, "there is no allegation [in the Penn Fabrication action] that any such infringement was done in the course of [appellants'] advertising activities."

Appellants thereafter settled the Penn Fabrication action using their own funds.

### IV. Present Action

In January 2000, appellants brought the instant action for breach of contract—duty to defend and breach of the covenant of good faith and fair

dealing.[3] Appellants moved for summary adjudication of their cause of action for breach of the contractual duty to defend them in the Penn Fabrication action. By stipulation, appellants' motion was heard with respondent's cross-motion for summary judgment brought on the grounds respondent had no such duty to defend.

In their motion, appellants argued that the Penn Fabrication action contained, in substance, a claim of "trade dress" infringement by alleging that appellants misappropriated the unique design of the Penn Fabrication handles onto their own handles, falsely designated the origin of their handles, and were selling the handles as their own. Therefore, because (1) trade dress infringement is a species of trademark infringement, (2) the policies provided coverage for advertising injury arising out of trademark infringement, and (3) selling encompasses advertising, respondent had a duty to defend them in the Penn Fabrication action.

In support of appellants' motion, appellant Zamberg declared: El-Com advertises its handles, including the model No. 70-2326 handles that were the subject of the Penn Fabrication action, by direct mailings to customers, catalogs, and the Internet. El Com first offered the 70-2326 handles for sale on April 15, 1998. It did not then have a catalog featuring the 70-2326 handles and so used the handles themselves for its sales presentations. The 70-2326 handles appeared in El-Com's 1999 catalog, which was printed on August 6, 1998, and distributed on September 17, 1999.[4] They also appeared in its "1999 Fall-Winter Special" brochure, distributed October 6, 1999, and in its 2000 catalog, printed on January 26, 2000, and distributed February 1, 2000. The handles first appeared on El-Com's Web site in August 1999. Catalogs are provided to all El-Com customers, who use them to place orders with El-Com sales representatives. The sales representatives also use the catalogs in their efforts to sell the handles by showing potential customers the handles featured in the catalogs. El-Com exhibited the handles at the

---

[3]The complaint also alleged causes of action for declaratory relief, which appellants subsequently dismissed.

[4]In their reply brief appellants state for the first time that "September 17, 1999" in Zamberg's declaration was a typographical error and the correct catalog distribution date was September 17, 1998. They assert respondent implicitly recognized the error because it failed to raise the issue below. Although it is reasonable to assume that a catalog would be distributed within six weeks rather than 13 months of its printing, appellants' claim of a typographical error and assertion that respondent recognized the error at this late stage of the proceedings is somewhat disingenuous. Appellants incorporated the September 17, 1999 date into the statement of undisputed facts accompanying their motion for summary adjudication, in their opposition to respondent's motion for summary judgment, and in their opening brief. As we discuss, *post*, however, whether the distribution date is September 1998 or September 1999 is ultimately irrelevant for purposes of this appeal.

National Association of Music Merchants trade shows held in July 1998 and July 1999 in Nashville and in January 1999 in Los Angeles.

During the summary judgment proceedings respondent acknowledged that the Penn Fabrication complaint contained facts sufficient to constitute an allegation of infringement of trade dress. Its motion for summary judgment was made on the grounds that Penn Fabrication's damages from appellants' alleged "trade dress" infringement did not arise from appellants' advertising activities but from their copying and selling the allegedly infringing handle. Therefore, it did not have a duty under the policies to defendant to defend appellants in the Penn Fabrication action.

The trial court concluded that respondent owed no duty to defend appellants in the Penn Fabrication action under the applicable policies and entered summary judgment in its favor.

## DISCUSSION

### I. Standard of Review

■ Summary judgment is properly granted where there are no triable issues of material fact and the evidence establishes that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) If there is no triable issue of fact, a court determines the legal issues of the case. (*Lebas Fashion Imports of USA, Inc, v. ITT Hartford Ins. Group* (1996) 50 Cal.App.4th 548, 555 [59 Cal.Rptr.2d 36] (*Lebas*).)

Summary judgments are reviewed de novo, pursuant to the same statutory procedure as the trial court. (*Lowe v. California League of Prof. Baseball* (1997) 56 Cal.App.4th 112, 122 [65 Cal.Rptr.2d 105]; *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 629 [41 Cal.Rptr.2d 329]; see generally *Aguilar v. Atlantic Richfield Company* (2001) 25 Cal.4th 826, 843-857 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

### II. Duty to Defend

■ An insurer owes a broad duty to defend its insured against claims that create a potential for indemnity, and must defend any action that potentially seeks damages within the policy's coverage. The duty to defend is determined by comparing the allegations of the third party complaint with the terms of the policy. Facts extrinsic to the complaint known to the insurer at the inception of the third party lawsuit may also give rise to a duty to defend when they reveal a possibility the policy may cover the claim.

(*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose*).) Even if the face of the complaint does not suggest a potential for liability under the policy, the extrinsic facts known to the insurer can generate a duty to defend, because current pleading rules liberally allow amendment and the third party cannot be the arbiter of coverage. (*Id.* at p. 296.)

The duty to defend arises on tender of defense and continues until the underlying lawsuit is concluded or until the insurer establishes, by reference to undisputed facts, the absence of any potential for coverage. (*Montrose, supra,* 6 Cal.4th at pp. 295, 300.) Generally, when there is any doubt as to the existence of a duty to defend, the doubt must be resolved in favor of the insured. (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1186 [96 Cal.Rptr.2d 136].)

III.  *General Principles of Trademark and "Trade Dress"*

The Lanham Act (15 U.S.C. § 1051 et seq.) defines "trademark" as "any word, name, symbol, or device, or any combination thereof . . . [¶] (1) used by a person, or [¶] (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." (15 U.S.C. § 1127.)

An infringement of a trademark is defined as an act committed by any person who, without the consent of the registrant, shall: "(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." (15 U.S.C. § 1114, commonly known as section 32 of the Lanham Act.)

██  " 'A trademark serves three distinct and separate purposes: (1) It identifies a product's origin, (2) it guarantees the product's unchanged quality, and (3) it advertises the product. Injury to the trademark in any of its offices as an identifying, guaranteeing or advertising device should suffice to constitute an infringement thereof.' [Citation.] . . . 'A trademark is but a species of advertising, its purpose being to fix the identity of the article and the name of the producer in the minds of people who see the advertisement, so that they may afterwards use the knowledge themselves and carry it to others having like desires and needs for such article.' [Citation] . . . [A]s the [Lanham Act] itself makes clear, the advertising of a good or service is

one of the ways in which an act of infringement [of a registered trademark] can occur." (*Lebas, supra,* 50 Cal.App.4th at p. 557, italics omitted.)

The Lanham Act also protects the *unregistered* features of a product. "Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— [¶] (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . [¶] . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." (15 U.S.C. § 1125(a), commonly known as section 43(a) of the Lanham Act.)

The relationship between trademark and trade dress is discussed in Restatement Third of Unfair Competition. "The law of trademarks deals primarily with designations consisting of words or other symbols used to indicate the source of goods or services. However, the manner in which the goods or services are presented to prospective purchasers, or the physical features of the product itself, may also serve as an indication of source. Source significance may attach, for example, to the overall appearance of a product . . . or to some specific element or aspect of that appearance. The appearance [i.e., the trade dress] then functions as a trademark, distinguishing the goods . . . of one seller from those of others." (Rest.3d Unfair Competition, § 16, com. a, p. 157.)

Federal courts have held that, in the context of a claimed infringement, there is "probably no substantive difference between" trademark and trade dress. (*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.* (7th Cir. 1986) 781 F.2d 604, 608 (*Blau*), cited with approval in *Aloha Pacific, Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297, 320 [93 Cal.Rptr.2d 148]).) "[S]ection 43(a) of the Lanham Act is not limited to trademark infringement. In fact it does not mention trademarks. It provides a remedy for trademark infringement only because that is a type of unfair competition, and it provides a remedy for other types as well. 'Trade dress,' a commonly used term in the law of unfair competition, denotes the form in which a producer presents his brand to the market . . . If a seller adopts a trade dress confusingly similar to a competitor's, this is unfair competition actionable under section 43(a). . . . [¶] Because [the Lanham Act] is not limited to trademark infringement and in any event protects unregistered (common

law) trademarks as well as federally registered trademarks, courts have generally not thought it important whether trade dress is a form of trademark; but it is . . ." (*Blau, supra,* 781 F.2d at p. 608.)

The United States Supreme Court echoed *Blau*'s reasoning in *Two Pesos, supra,* 505 U.S. at page 773 [112 S.Ct. at pages 2759-2760].[5] It held that if the trade dress for which an entity seeks protection under section 43(a) of the Lanham Act is inherently distinctive, it is capable of identifying products as coming from a specific source. "This is the rule generally applicable to trademarks, and the protection of trademarks and trade dress under § 43(a) serves the same statutory purpose of preventing deception and unfair competition. There is no persuasive reason to apply different analysis to the two." *(Two Pesos, supra,* 505 U.S. at p. 773 [112 S.Ct. at p. 2760].)

IV. *The Potential for Coverage of Penn Fabrication's Claimed Injuries Based on Trade Dress Infringement.*

A. *Advertising Injury*

As noted, the instant polices provide coverage for (1) advertising injury when (2) the advertising injury was caused by an offense committed in the course of advertising appellants' products. "Trademark infringement" is among the policies' predicate offenses defining advertising injury. Respondent has conceded that the Penn Fabrication action alleged claims for infringement of the trade dress of the disputed handle and has impliedly recognized that trade dress infringement is a species of trademark infringement. Therefore the first criterion for the policies' potential coverage of the damages alleged in the Penn Fabrication is met: an advertising injury as defined in the policies.

B. *Causal Connection*

The crux of the parties' dispute is whether the advertising injury, i.e., trade dress infringement, was caused in the course of appellants' advertising. Respondent argues that the undisputed facts demonstrate an absence of the second criterion for coverage because the evidence demonstrates only that an infringement occurred when appellants manufactured and sold the disputed handle, and that their advertising simply exposed the infringement; it did not cause it. Appellants argue that because a purpose of a product's trade dress

---

[5]In *Two Pesos*, the court analyzed whether an unregistered but inherently distinctive mark was eligible for protection under section 43a (15 U.S.C. § 1125 (a)), without a showing that it has acquired secondary meaning. The court concluded that it was.

is to advertise the product, and the Penn Fabrication complaint alleged that they passed, palmed off and used in commerce a handle that copied and appropriated the unique design of the Penn Fabrication handle, the Penn Fabrication complaint demonstrates that they committed a trade dress infringement in the course of their advertising.

In interpreting policy language similar to that of the instant policy, *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545] (*Bank of the West*) adopted what appears to be the nationwide majority rule and held that "advertising injury" must have a causal connection with the insured's advertising activities before there can be coverage. It concluded that, as a matter of interpretation and of common sense, the majority rule "best articulates the insured's objectively reasonable expectations about the scope of coverage." (*Id.* at p. 1276.)

As a matter of interpretation, according to *Bank of the West*, the context of the policy at issue therein strongly indicated the requirement of a causal connection. The court reasoned that the types of advertising injuries enumerated therein (defamation, invasion of privacy, infringement of copyright, title, or slogan) often do have a causal connection with advertising. (*Bank of the West, supra*, 2 Cal.4th at p. 1276.) For example, defamation occurs upon publication. Violation of a right to privacy in the advertising context is synonymous with unwanted publicity. Infringement of copyright or title typically occurs upon unauthorized reproduction or distribution of the protected material. (*Ibid.*)[6] By parity of reasoning, an objectively reasonable insured, considering the term at issue in the subject policy, trademark infringement, would not conclude that the term could refer to claims that bore no causal relationship to its advertising activities.

Moreover, *Bank of the West* reasoned, as a matter of common sense, an objectively reasonable insured would not expect the nearly unlimited coverage that would be available absent a causal relationship requirement. "Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal relationship were required between 'advertising activities' and 'advertising injuries,' then 'advertising injury' coverage, alone, would encompass most claims related to the insured's business." (*Bank of the West, supra*, 2 Cal.4th at pp. 1276-1277, fn. omitted.)

The Penn Fabrication complaint nowhere used any variation of the word "advertise" or "promote," nor did it refer to or describe any advertising or

---

[6]The broadened coverage endorsement of the policies at issue in this case also lists defamation and invasion of privacy as advertising injuries, and has added "trademark" to copyright, title or slogan infringement.

promotional literature promulgated by appellants. It alleged that Penn Fabrication was injured by appellants' "offering to sell," "selling," "pass[ing] and palm[ing] off," and "us[ing] in commerce" the copied handle. As federal courts in California have concluded when applying *Bank of the West, supra*, 2 Cal.4th at page 1277 in diversity actions, "selling" alone is not synonymous with "advertising." (See *Dogloo, Inc. v. Northern Ins. Co. of New York* (C.D.Cal. 1995) 907 F.Supp. 1383, 1390-1391; *New Hampshire Ins. v. R.L. Chaides Const.* (N.D.Cal. 1994) 847 F.Supp. 1452, 1457.) Moreover, although phrases like "passing off" may, in the abstract, suggest advertising activities, they must be read in the context of the underlying complaint. To raise a potential for coverage, the underlying complaint must show that the insured's advertising caused the third party's injury. (See *Simply Fresh Fruit, Inc. v. Continental Ins. Co.* (9th Cir. 1996) 94 F.3d 1219, 1222; *Microtec Research v. Nationwide Mut. Ins. Co.* (9th Cir. 1994) 40 F.3d 968, 970-971.)

In this case, it is unnecessary to decide whether the Penn Fabrication complaint's allegations of "offering to sell," "passing off," and "using in commerce" the infringing handle suffice, standing alone, to establish that the advertising injury to Penn Fabrication, i.e., trade dress infringement, was caused in the course of appellants' advertising, thereby creating a potential for coverage under the policies. The extrinsic facts known to respondent at the time appellants tendered their defense of the Penn Fabrication action, considered in light of the complaint's allegations, reveal a possibility of a covered claim.

When appellants requested reconsideration of respondent's denial of coverage on June 30, 1999, they provided respondent with photocopies of the allegedly infringing handle from their catalog. The generally accepted definition of "advertise" as used in comprehensive general liability policies is the act of calling public attention to one's product through widespread promotional activities. (*Bank of the West, supra*, 2 Cal.4th at p. 1276, fn. 9; *Peerless, supra*, 82 Cal.App.4th at pp. 1009-1112; see also Black's Law Dict. (7th ed. 1999) p. 55, col. 1.) A manufacturer/seller's catalog fits neatly into this commonly understood meaning of advertising, as respondent acknowledged at oral argument.

The Penn Fabrication complaint alleged that appellants infringed the trade dress of the Penn Fabrication handle by, inter alia, copying the Penn Fabrication handle so as to confuse customers between appellants' handle and the Penn Fabrication handle. To cause customer confusion, appellants would have had to call attention to the appearance of their own handles, and an obvious method for doing so was to depict the handles in their catalog.

The catalog, therefore, potentially establishes that, as used in the Penn Fabrication complaint, the allegations of "passing off," "palming off," and "offering to sell" the infringing handle connote advertising the disputed handles. Thus, when respondents resubmitted their tender of defense, respondent had before it sufficient facts to show that appellants' trade dress infringement was caused by the advertising of their handles using the infringing trade dress of the Penn Fabrication handles. With this evidence of a potential for coverage, respondent's duty to defend attached.

As noted in footnote 4, *ante*, there is some confusion as to whether this catalog had in fact been distributed prior to the March 1999 filing of the Penn Fabrication complaint. The catalog's 1998 copyright and appellant Zamberg's June 2000 declaration that it was printed in August 1998 imply distribution in 1998, but Zamberg also declared that it was first distributed in September 1999, several weeks after respondent's August 1999 final denial of appellants' tender. Until a catalog is made available to the public, i.e., distributed, it cannot reasonably be construed as an advertising vehicle.

We reiterate that the determination of the duty to defend is based on the facts known to the insurer at the inception of the third party lawsuit, and if the duty exists, it continues until the insurer establishes there is no potential for coverage. (*Montrose, supra*, 6 Cal.4th at p. 295.) When appellants retendered their defense, respondent was on notice, via the catalog excerpts, that appellants had advertised the infringing handle before the Penn Fabrication action was filed. If subsequent discovery established that the catalog was not distributed until September 1999, and that it was the only advertising of the handle prior to the Penn Fabrication action, the duty to defend would, arguably, cease. However, respondent would have remained obligated to defend until it established beyond dispute that the infringing handle had not been advertised at the time of tender. (*Montrose, supra*, 6 Cal.4th at pp. 295, 300.)

In any case, even if, as Zamberg declared, the catalog was not distributed until September 1999, respondent cannot demonstrate on this record the absence of any potential for coverage under the policies' advertising provisions. Zamberg also declared that the infringing handles were exhibited and made part of sales presentations at July 1998 and January 1999 music merchant trade shows. A manufacturer's display and presentation of its products to a significant number of its client base, particularly at a site other than the manufacturer's factory or showroom, would be commonly understood to fall within the definition of advertising, to wit, calling public attention to the merits of one's product so as to encourage purchase of the

product. Although the Zamberg declaration might have shown (assuming no typographical error) that one vehicle used to advertise the infringing handles—the catalog—was not used until after the date of tender, it simultaneously showed that another advertising vehicle—the trade show sales presentations—was used prior to tender. With the latter evidence, appellants demonstrated a potential for coverage under the policies' advertising provisions because their infringement of the trade dress of the Penn Fabrication's handles occurred in the course of advertising its products.

We conclude that the allegations of the Penn Fabrication complaint charging appellants with trade dress infringement, when read together with the extrinsic evidence provided respondent at the time of tender, were sufficient to charge the commission of an act potentially covered under the subject policies. As such, they sufficed to establish respondent's duty to defend respondents in the Penn Fabrication action, and the trial court erred in entering summary judgment in respondent's favor.

V. *Breach of the Covenant of Good Faith and Fair Dealing**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### Disposition

The summary judgment is reversed. On remand the superior court shall enter an order granting respondent's motion for summary adjudication as to appellants' cause of action for breach of the covenant of good faith and fair dealing and shall conduct further proceedings consistent with the views expressed herein. Costs on appeal to appellants.

Stevens, J., and Simons, J., concurred.

---

*See footnote, *ante*, page 205.