311 F.3d 979
 Robert J. CORT, individually and as Trustee of the Robert J. Cort Trust, Plaintiffs-Appellants,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANIES, INC. and United States Fidelity and Guaranty Company, Inc., Defendants-Appellees.
 No. 00-17468.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 12, 2002.
 Filed November 25, 2002.
 
 COPYRIGHT MATERIAL OMITTED Lawrence G. Townsend, Owen, Wickersham & Erickson, P.C., San Francisco, CA, for the appellants.
 Clark J. Burnham and Susan E. Firtch, Burnham & Brown, Oakland, CA, for the appellees.
 Appeal from the United States District Court for the Northern District of California; Martin J. Jenkins, District Judge, Presiding. D.C. No. CV-99-00386-WBS.
 Before THOMPSON, W. FLETCHER and BERZON, Circuit Judges.
 OPINION
 WILLIAM A. FLETCHER, Circuit Judge:
 
 
 1
 This case lies at the intersection of visual art and commercial property insurance. Appellants Robert J. Cort and the Robert J. Cort Trust ("the Corts") argue that their property insurance policy gave rise to a duty to defend by their insurer, appellee St. Paul Fire and Marine Insurance/Fidelity and Guaranty Insurance Underwriters, Inc. ("St.Paul"), when the Corts were sued after they covered a mural on the wall of their building. We affirm the district court's decision that there was no duty to defend.
 
 I. Background
 
 2
 In 1986, the City and County of San Francisco commissioned renowned artist Jesus "Chuy" Campusano to paint a mural in San Francisco's Mission District. The site chosen was the south exterior wall of a former factory building owned by the Lilli Ann Corporation. After six weeks of work, Campusano and his colleague Elias Rocha finished a 46-foot by 46-foot mural of brightly colored geometric abstractions. Over the next decade, the "Lilli Ann mural" became a familiar landmark.
 
 
 3
 In January 1997, the Lilli Ann Corporation sold the building to the Corts. A little over a year later, in March 1998, the Corts purchased a general liability insurance policy ("the policy") from St. Paul. In the summer of 1998, the Corts found a tenant for the building and began repairing it. Because the building had several leaks, the repair work included application of an opaque white sealant, "Kel-Bond," to the exterior walls. The application of the Kel-Bond coating to the south wall of the building in July 1998 effectively covered the Lilli Ann mural.
 
 
 4
 After the mural was covered, Campusano's children (Campusano died in 1997) and Rocha (collectively, "the artists") filed a lawsuit against the Corts under the Visual Artists' Rights Act of 1991 ("VARA"), 17 U.S.C. § 106A, and under the California Art Preservation Act ("CAPA"), Cal. Civ. Code § 987. Both VARA and CAPA prevent the modification or destruction of certain works of art without the consent of the artist. See 17 U.S.C. § 106A(a)(3); Cal. Civ.Code § 987(c). The artists' complaint alleged that the Corts "intentionally and knowingly altered, mutilated and distorted" the mural without making an effort to notify the artists. The complaint alleged "irreparable damage to the artists' reputation and prestige in the community" from the loss of the "masterpiece," as well as lost licensing fees and other revenues. The artists also sued under California's unfair competition law, Cal. Bus. & Prof. Code § 17200 et seq. ("§ 17200"), alleging an unlawful and fraudulent business practice.
 
 
 5
 The artists sought $500,000 in damages and an injunction against further damage to the mural. The City and County of San Francisco ("City"), which had paid $40,000 for the creation of the mural, intervened as plaintiff and asserted a claim for violation of CAPA. The parties settled in December 1999. Under the settlement, the plaintiffs agreed to drop their claims and cede control of the mural to the Corts in exchange for $200,000.
 
 
 6
 When the artists filed their lawsuit, the Corts asked St. Paul to provide a defense pursuant to the policy. The Corts argued that the artists' complaint came within the policy's coverage for property damage, personal injury, or advertising injury. St. Paul, however, refused to defend. After several months of correspondence, the Corts filed this action in California state court for breach of contract and bad faith. St. Paul removed to federal district court pursuant to 28 U.S.C. § 1441(b).
 
 
 7
 The district court granted summary judgment to St. Paul, holding that none of the identified portions of the insurance policy gave rise to a duty to defend. The Corts appeal only the personal injury and advertising injury holdings. We are asked to decide not whether the policy gave rise to a duty to indemnify the Corts for the $200,000 settlement with the artists, but rather whether it gave rise to a duty to defend. The parties do not dispute the material facts.
 
 
 8
 The interpretation of an insurance policy, as applied to undisputed facts, is a question of law. See Stanford Ranch, Inc. v. Md. Cas. Co., 89 F.3d 618, 624 (9th Cir.1996) (citing Fragomeno v. Ins. Co. of the West, 207 Cal.App.3d 822, 255 Cal. Rptr. 111 (1989)). We review the grant of summary judgment de novo. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir.2001). We have jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1291. The district court applied California law, as do we.
 
 II. Duty To Defend
 
 9
 A liability insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity." Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (quoting Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)). The duty to defend is broader than the duty to indemnify and may exist even when coverage is in doubt. Id. "The duty to defend arises on tender of defense and continues until the underlying lawsuit is concluded or until the insurer establishes, by reference to undisputed facts, the absence of any potential for coverage." El-Com Hardware, Inc. v. Fireman's Fund Ins. Co., 92 Cal.App.4th 205, 213, 111 Cal.Rptr.2d 670 (2001) (citing Montrose, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153). To determine whether the duty to defend is present, a court "compar[es] the allegations of the third party complaint with the terms of the policy." Id. at 212, 111 Cal.Rptr.2d 670.
 
 
 10
 When a defense is first tendered, "[t]he question is not whether the allegations of the underlying complaint are meritorious, but rather whether [the] policy terms require [the insurer] to provide a defense against such claims." Reese v. Travelers Ins. Co., 129 F.3d 1056, 1061 (9th Cir.1997). Once the duty to defend attaches, "the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered." Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). The fact that the policy does not explicitly provide coverage for claims under VARA, CAPA, or § 17200 does not end our inquiry. Rather, "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." Barnett v. Fireman's Fund Ins. Co., 90 Cal.App.4th 500, 510, 108 Cal.Rptr.2d 657 (2001); see also Swain v. Cal. Cas. Ins. Co., 99 Cal.App.4th 1, 8, 120 Cal.Rptr.2d 808 (2002) (emphasizing importance of examining facts alleged in the complaint).
 
 
 11
 If a third party complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage," there is no duty to defend. La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 9 Cal.4th 27, 39, 36 Cal. Rptr.2d 100, 884 P.2d 1048 (1994) (internal quotation marks omitted). "For example, the insured could not reasonably expect protection under an automobile insurance policy for injury which occurs from a defect in a stairway." Id. (internal quotation marks and citation omitted). When the potential for liability does not arise from disputed facts but rather "hinge[s] on resolution of a legal question," there is no duty to defend pending the resolution of the question. A-Mark Fin. Corp. v. CIGNA Prop. & Cas. Cos., 34 Cal.App.4th 1179, 1192, 40 Cal.Rptr.2d 808 (1995). This is so where the "only potential for liability turns on resolution of a legal question." Michaelian v. State Comp. Ins. Fund, 50 Cal.App.4th 1093, 1105, 58 Cal.Rptr.2d 133 (1996) (quoting Waller v. Truck Ins. Exch. Inc., 11 Cal.4th 1, 25-26, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995)) (emphasis added).
 
 III. Policy Provisions
 
 12
 The Corts contend on appeal that two provisions of the policy may be construed to cover the artists' claims. The policy covers "`personal injury' caused by an offense arising out of your business," including
 
 
 13
 (d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
 
 
 14
 (e) Oral or written publication of material that violates a person's right to privacy.
 
 
 15
 The policy also covers "advertising injury," defined as an "offense committed in the course of advertising your goods, products or services."
 
 
 16
 We consider personal injury and advertising injury in turn.
 
 IV. Personal Injury
 A. Claim Under VARA
 
 17
 The artists alleged in their complaint that the Corts violated VARA[1] by covering the mural and by failing to notify the artists beforehand. The policy does not explicitly cover claims brought by visual artists under VARA. Nevertheless, if the substance of the artists' claims could have been stated as a claim covered by the policy, St. Paul's duty to defend is triggered. See Barnett, 90 Cal.App.4th at 510, 108 Cal.Rptr.2d 657.
 
 VARA provides, in relevant part:
 
 18
 (a) Rights of attribution and integrity.... [T]he author of a work of visual art —
 
 
 19
 ...
 
 
 20
 (3) subject to the limitations set forth in section 113(d), shall have the right —
 
 
 21
 (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
 
 
 22
 (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.
 
 
 23
 17 U.S.C. § 106A.
 
 
 24
 If the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), the author's rights under paragraphs (2) and (3) of section 106A(a) shall apply unless —
 
 
 25
 (A) the owner has made a diligent, good faith attempt without success to notify the author of the owner's intended action affecting the work of visual art, or
 
 
 26
 (B) the owner did provide such notice in writing and the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal.
 
 
 27
 17 U.S.C. § 113(d)(2).
 
 
 28
 The purpose of VARA is to protect two "moral rights" of artists — the rights of "integrity" and "attribution." See H.R.Rep. No. 101-514, at 5 (1990), reprinted in 1990 U.S.C.C.A.N. 6915, 6915 (stating that VARA protects rights that "are analogous to ... `moral rights'"). Widely recognized in Europe, a moral right protects rights of artists in their works after they have given up legal title. The right of integrity "allows the [artist] to prevent any deforming or mutilating changes to his work, even after title in the work has been transferred." Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 81 (2d Cir.1995) (citing Ralph E. Lerner & Judith Bresler, Art Law 420 (1989)). The right of attribution allows the artist to be recognized by name as the creator of a work. It includes an artist's right to prevent the use of his or her name on distorted pieces of art originally produced by him or her. See id. (citing 2 Nimmer on Copyright 8D-5 (1994)).
 
 
 29
 In part because moral rights conflict with traditional common law property rights, American law has resisted recognizing moral rights. See Lee v. A.R.T. Co., 125 F.3d 580, 582 (7th Cir.1997) ("Until recently it was accepted wisdom that the United States did not enforce any claim of moral rights ...."). In 1988, however, the United States acceded to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), drafted a century earlier, which contains a moral rights provision. See Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, art. 6 bis. To implement, at least in part, the moral rights provision of Article 6 bis, Congress enacted VARA in 1990.
 
 
 30
 Rights protected by VARA include the right "to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to [the artist's] honor or reputation." 17 U.S.C. § 106A(a)(3)(A). VARA also gives artists who produce works "of recognized stature" the right to prevent the works' destruction. 17 U.S.C. § 106A(a)(3)(B). Finally, VARA requires a building owner to notify, or diligently attempt to notify, an artist prior to alteration of visual artwork that is part of a building. 17 U.S.C. § 113(d)(2).
 
 
 31
 The Corts argue that the substance of the artists' complaint could have given rise to a claim covered under the personal injury provisions of the policy, and that it therefore triggered a duty to defend. The potentially relevant claims for which personal injury coverage is provided are libel, disparagement, and invasion of privacy.
 
 1. Libel
 
 32
 Libel is defined under California law as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency o injure him in his occupation." Cal. Civ.Code § 45. The policy states that coverage is limited to "oral or written publication of material," but counsel for St. Paul stated at oral argument that the policy covers any libel within the scope of the California statute. Thus, the Corts need not demonstrate that the covered mural constituted a written publication in the sense of written words. They need only demonstrate that it constituted a "printing, picture, effigy, or other fixed representation to the eye." Under California Civil Code § 45, it would be sufficient for the Corts to show that the obscured mural could constitute a "false ... publication" that had "a tendency to injure [them] in [their] occupation."
 
 
 33
 "An essential element of defamation is that the publication in question must contain a false statement of fact." Savage v. Pac. Gas & Elec. Co., 21 Cal.App.4th 434, 444, 26 Cal.Rptr.2d 305 (1993) (internal quotation marks omitted) (emphasis in original removed). "`Publication' is ... a term of art .... For publication to occur the defamatory matter must be communicated to a third party who understands the defamatory meaning and its applicability to the plaintiff." Neary v. Regents of Univ. of Cal., 185 Cal.App.3d 1136, 1147, 230 Cal.Rptr. 281 (1986); accord Ringler Assocs., Inc. v. Md. Cas. Co., 80 Cal. App.4th 1165, 1179, 96 Cal.Rptr.2d 136 (2000). "To determine whether a representation is libelous, [courts] look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication. In this connection the expression used as well as the whole scope and apparent object of the writer must be considered." Alszeh v. Home Box Office, 67 Cal.App.4th 1456, 1461, 80 Cal.Rptr.2d 16 (1998) (internal quotation marks omitted).
 
 
 34
 The artists did not allege in their complaint that the Corts had published a false statement. The Corts argue, however, that the artists' claim is tantamount to a claim that the covered mural is a false statement about their artistic expression. It is true that VARA protects an artist from "any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation." 17 U.S.C. § 106A(a)(3)(A). It is also true that a distortion or mutilation of a work might, in some circumstances, constitute a falsehood in the sense that it would communicate a false impression of the work that the artist produced. See Martin A. Roeder, The Doctrine of Moral Right: A Study in the Law of Artists, Authors and Creators, 53 Harv. L.Rev. 554, 569 (1940) ("[T]o deform his work is to present him to the public as the creator of work not his own, and thus make him subject to criticism for work he has not done.").
 
 
 35
 However, the Corts neither distorted nor mutilated the mural. Rather, they covered it with an opaque white sealant. When the Corts covered the mural, it simply disappeared. Under California libel law, this cannot be construed as "false publication."
 
 
 36
 We agree with the Corts that because the white sealant covered the entire south wall of the building and was visible to passers-by, it satisfied the dissemination requirement of publication. But it did not satisfy the requirement that the message conveyed be false. To those who knew that the mural had previously been on the wall of the building, the message communicated might have been that the owner of the building did not care enough about the mural to preserve it. That communication would have been insulting to the artists, but it would have been true. To those who did not know about the mural, the message communicated would have been no message at all. In either case, there would have been no false message communicated. We therefore conclude that the artists' VARA claim did not constitute a claim for libel under the policy.
 
 2. Disparagement
 
 37
 Under California law, "disparagement" covers claims for trade libel. See, e.g., Microtec Research v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972 (9th Cir. 1994). Trade libel differs from libel in that an "action for defamation is designed to protect the reputation of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on pecuniary damage and lies only where such damage has been suffered." Id. (citation omitted). Here, although the artists alleged pecuniary damage, their claim cannot be construed as a trade libel claim because, like the potential libel claim, it fails to satisfy the requirement of false publication.
 
 3. Invasion of Privacy
 
 38
 Under California law, the tort of invasion of privacy "provides a remedy for situations in which there is neither injury to a property right nor breach of contract, and where a civil action for defamation would fail because of the defense of truth." 5 Witkin, Summary of California Law § 577 (1988). False light invasion of privacy "is the wrong inflicted by publicity which puts the plaintiff ... in a false but not necessarily defamatory position in the public eye." Id. § 584 (citation omitted). California courts have largely collapsed "false light" causes of action into libel. See, e.g., M.G. v. Time Warner, Inc., 89 Cal.App.4th 623, 636, 107 Cal.Rptr.2d 504 (2001) ("A `false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such."); Aisenson v. Am. Broad. Co., 220 Cal.App.3d 146, 161, 269 Cal.Rptr. 379 (1990) ("A `false light' cause of action is in substance equivalent to a libel claim ....").
 
 
 39
 Nevertheless, a false light claim still requires the invasion of some type of privacy interest. "The right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation." 5 Witkin § 579 (quoting Fairfield v. Am. Photocopy Equip. Co., 138 Cal.App.2d 82, 86, 291 P.2d 194 (1955)). Even if they could satisfy us that there is a potential libel claim, the Corts have not explained how covering a publicly displayed mural constituted invasion of a privacy interest held by the artists and have pointed to no portion of the artists' complaint stating a claim sounding in invasion of privacy. We therefore find no duty to defend under the privacy provision of the policy. See Alszeh, 67 Cal.App.4th at 1464, 80 Cal. Rptr.2d 16 ("When ... an invasion of privacy claim rests on the same allegations as a claim for defamation, the former cannot be maintained as a separate claim if the latter fails as a matter of law.").
 
 
 40
 B. Claim Under Cal. Bus. & Prof.Code § 17200
 
 
 41
 The artists' complaint that the Corts violated § 17200 did not give rise to a duty to defend under the policy. California provides a private cause of action for any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.Code § 17200. This "sweeping language" includes "anything that can properly be called a business practice and that at the same time is forbidden by law." Bank of the West v. Superior Court, 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (internal quotation marks omitted). The statute "governs anti-competitive business practices as well as injuries to consumers." Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (internal quotation marks omitted).
 
 
 42
 Section 17200, however, entitles an individual litigant only to injunctive and restitutionary relief; it does not provide for damages. See Bank of the West, 2 Cal.4th at 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545; see also Cal. Bus. & Prof.Code § 17203; Cel-Tech, 20 Cal.4th at 179, 83 Cal.Rptr.2d 548, 973 P.2d 527. The artists sought damages under VARA and CAPA, and injunctive relief under § 17200. Because the policy only covers payment of damages (and certain associated legal fees), the artists' § 17200 claim did not give rise to a duty to defend. See La Jolla Beach & Tennis Club, 9 Cal.4th at 39, 36 Cal. Rptr.2d 100, 884 P.2d 1048.
 
 V. Advertising Injury
 
 43
 The Corts also claim a duty to defend based on the "advertising injury" provision of the policy. The policy provides coverage for "`advertising injury' caused by an offense committed in the course of advertising your goods, products or services." The question before us is not whether the artists' injury is causally connected to the Corts' activity, for all parties agree that covering the mural gave rise to the artists' complaint. See Bank of the West, 2 Cal.4th at 1276, 10 Cal.Rptr.2d 538, 833 P.2d 545 (construing a similar policy to require a causal connection between advertising activity and advertising injury); see also Microtec, 40 F.3d at 971 ("[T]he injury for which coverage is sought must be caused by the advertising itself."). Rather, the question is whether covering the mural and displaying the blank wall may be construed as advertising within the meaning of the policy.
 
 
 44
 The policy does not define "advertising," but "[t]he generally accepted definition of `advertise' as used in comprehensive general liability policies is the act of calling public attention to one's product through widespread promotional activities." El-Com Hardware, 92 Cal.App.4th at 217, 111 Cal.Rptr.2d 670 (citing Bank of the West, 2 Cal.4th at 1276 n. 9, 10 Cal.Rptr.2d 538, 833 P.2d 545). The Corts make two arguments that they engaged in "widespread promotional activity" calling public attention to the availability of the building for lease. First, they argue that because the mural was well-known, highly visible, and had attracted inquiries from prospective tenants, it served as an advertisement for the building. Second, they argue that covering the mural and displaying the blank wall served as an advertisement of the availability to advertisers of the space on the wall.
 
 
 45
 The first argument fails for two reasons. First, it is irrelevant. The Corts argue that the mural drew attention to the building, but the question is not what the mural accomplished. Rather, the question is what covering the mural accomplished. Obviously, covering the mural terminated any advertising that the mural might previously have provided. Second, to the extent that the Corts' argument could rest on the assertion that the use of the mural itself constituted advertising injury, the argument is contradicted by California case law. In Ziman v. Fireman's Fund Ins. Co., 73 Cal.App.4th 1382, 87 Cal. Rptr.2d 397 (1999), a California court of appeal rejected a virtually identical argument. In Ziman, the owner of a building had used a loaned original painting for the purpose of making the building's lobby more attractive for a brokers' reception. Later, the building owner replaced the original painting with a copy. The artist who created the painting sued the building owner for copyright infringement. The building owner then sued its insurer, with whom it had a policy covering advertising injury, alleging a violation of the duty to defend. Id. at 1386, 87 Cal.Rptr.2d 397. The California court of appeal held that neither the display of the original nor the display of the copy constituted advertising within the meaning of the policy.
 
 
 46
 The second argument, that covering the mural and displaying the blank wall constituted an advertisement for the available wall space on the building, also fails. That the Corts had plans to lease the wall for advertising purposes does not by itself demonstrate that covering the mural was advertising. If the Corts covered the mural to advertise the wall as being available to advertisers, then they might be able to argue that this constituted advertising. But the timing of events belies this argument. The Corts covered the mural in July 1998. By that time, however, the tenant occupying the majority of the space in the building, University Games, had already signed a lease that included a provision allowing it to use the wall for its own advertising.
 
 Conclusion
 
 47
 Because the artists' claims cannot be construed as alleging any cause of action within the personal injury or advertising injury coverage of the St. Paul insurance policy, the judgment of the district court is
 
 
 48
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 We limit our discussion to VARA. The artists' claim for violation of VARA is essentially the same as their claim for violation of CAPA. Moreover, it appears that CAPA may have been preempted by VARASee 17 U.S.C. § 301(f)(1); Lubner v. City of Los Angeles, 45 Cal.App.4th 525, 531, 53 Cal.Rptr.2d 24 (1996) (noting preemption).