**TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,**
Plaintiff,

v.

**WALKER & ZANGER, INC., former known as Walker & Zanger (West Coast), Ltd., Defendant.**

**No. CIV.01CV1195–L(RBB).**

United States District Court,
S.D. California.

March 14, 2002.

Tuari Newman Bigknife, Morrison-Knox Holden Melendez, Walnut Creek, CA, for Plaintiff.

Robert T.Russell, Gray, Cary, Ware and Freidenrich, Palo Alto, CA, Daniel J. Herling, Duane Morris, San Francisco, CA, for Defendant.

**ORDER RE: WALKER & ZANGER'S MOTIONS (1) TO DISMISS OR STAY, AND (2) FOR PARTIAL SUMMARY JUDGMENT; TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT; WALKER & ZANGER'S REQUEST UNDER FRCP 56(f)**

LORENZ, District Judge.

On January 22, 2002, this matter came on regularly for a hearing on Plaintiff Travelers Indemnity Company of Connecticut's ("Travelers") motion for partial summary judgment, Defendant Walker & Zanger, Inc.'s ("Walker & Zanger") motion to dismiss or stay, and cross-motion for partial summary judgment. Thomas Holden of Morison–Knox Holden Melendez & Prough LLP appeared for the Plaintiff. Daniel Herling and Stephen Sutro of Duane Morris LLP appeared for the Defendant. At the hearing, the Court denied Walker & Zanger's motion to dismiss, and struck Walker & Zanger's cross-motion for partial summary judgment on the grounds it did not comply with the Civil Local Rules. The Court took under submission Walker & Zanger's motion to stay and Travelers' motion for partial summary judgment, and ordered the parties to submit supplemental briefs. The motions are now ripe for adjudication.

### FACTUAL BACKGROUND

Travelers issued to Walker & Zanger a commercial general liability insurance contract No. PJ–660–420J3509–TRI–95 effective October 29, 1995 to October 29, 1996 ("the Insurance Contract"). (Complaint ¶ 4.) The Insurance Contract contains commercial general liability coverage provisions that include, in part, "advertising injury" coverage provisions that extend certain coverage to Walker & Zanger subject to the terms, conditions, limitations, and exclusions of the Insurance Contract. (Complaint ¶ 5 and Exh. A at 68 thereto.)

On July 6, 1994, the San Diego Unified Port District ("the Port") and SGPA Architecture and Planning ("SGPA") entered into a written contract for the design of a series of new construction projects and repairs and upgrades of existing facilities.

(Travelers' Req. for Jud.Ntc.Exh. A ¶ 5.)[1] In furtherance of its contract with the Port, SGPA entered into contracts with design professionals and their consultants and advisors. *Id.* ¶ 16. On May 2, 1996, the Port entered into a written contract with Douglas E. Barnhart, Inc., a general contractor, for construction of a new terminal at Lindbergh Field, known as Terminal 2 ("the Airport Project"). *Id.* ¶ 17. Part of that contract required Barnhart to supply and install the stone and mortar floor for Terminal 2. *Id.* SGPA and Gensler and Associates ("Gensler"), a design professional, had already designed the flooring system. *Id.* Walker & Zanger consulted with Gensler to identify and specify some of the stone to be installed as the floor for the Airport Project. *Id.* Walker & Zanger later contracted with Cleveland Marble and Mosaic Company ("CMMC") to procure and supply some of the stone flooring tiles CMMC would furnish and install. *Id.*

On March 4, 1999, the Port filed a lawsuit against Walker & Zanger and others entitled *San Diego Unified Port Dist. v. SGPA Architecture & Planning, et al.*, San Diego Superior Court Case no. 728150 ("Underlying Action") for damages arising from problems with the various projects SGPA was contracted to design. (Complaint ¶ 6.) The Underlying Action also includes a related cross-complaint filed by CMMC. *Id.* The Port has filed six amended complaints. The most recent complaint was filed on November 13, 2001. (Travelers' Req. for Jud.Ntc.Exh. A.) In relevant part, the operative complaint in the Underlying Action alleges the design team for the Airport Project represented in writing that the specified stone floor in Terminal 2 was to last the entire life of the project and that a portion of the stone would be a stone known in the industry as "Hebron Yellow by Walker & Zanger." *Id.* ¶ 25(p). The complaint contends that the Hebron Yellow portions of the stone floor in Terminal 2 did not last even days without breaking, deteriorating, pitting, or discoloring, and the stone floor was unacceptable and unfit for the purpose intended. *Id.* The complaint alleges that the true facts were that there was, prior to the design phase of the project, no such product known as Hebron Yellow by Walker & Zanger, the stone was mislabeled and mischaracterized, that the stone was actually "Halila Gold" from a quarry previously unknown and untested to Walker & Zanger and other defendants, that the stone is not a stock item, takes months to acquire, and requires special processing. The Port further alleges that Dunhill, the perceived supplier to Walker & Zanger, was not involved and that Brastile had exclusive United States rights to the specified stone. *Id.* By not researching this, the design team allowed Walker & Zanger to contract for the "West Coast distribution" of the stone, which unnecessarily increased the price by adding frivolous mark-ups being paid. *Id.* In addition, the design team blindly accepted a sample specification from Walker & Zanger detailing the alleged physical characteristics without checking into whether the "Hebron Yellow by Walker & Zanger" specified met or exceeded the physical characteristics of the required stone, and therefore the Port got far less than it bargained for as the specified stone did not meet the required physical characteristics which Walker &

---

1. Travelers has requested the Court take judicial notice of pleadings filed in the Underlying Action. The Court finds these documents the proper subject of judicial notice pursuant to Federal Rule of Evidence 201 and **GRANTS** Travelers' request insofar as the Court has relied on those documents.

Zanger repeatedly represented that the stone possessed. *Id.* The Port alleges that when Walker & Zanger learned that the specified stone was from a quarry other than Dunhill, Walker & Zanger suppressed the information and failed to disclose it and/or the impact of the information to the Port. *Id.* In addition, the Port alleges the design team did not perform any tests of the specified stone or any proposed substitutes. *Id.* According to the Port, the Hebron Yellow stone failed all of the key characteristics expressly required including compressive strength, abrasive resistance, absorption resistance, and flexural strength. *Id.* The causes of action against Walker & Zanger are for negligent misrepresentation, breach of warranty, fraud, declaratory relief, and violation of the California False Claims Act.

Walker & Zanger requested that Travelers defend it in the Underlying Action.[2] (Complaint ¶ 10.) On January 21, 2000, Travelers agreed to defend Walker & Zanger in the Underlying Action, but reserved the right to withdraw from the defense and seek reimbursement of defence costs incurred. (Complaint ¶ 11; Flynn Decl. Exh. A.) The Underlying Action is still pending in San Diego Superior Court. Currently, discovery has been stayed while the parties attempt to settle the action.

On July 3, 2001, Travelers filed the instant action, alleging that given the terms of the Insurance Contract, the facts and allegations of the complaint in the Underlying Action, and applicable law, Travelers has no duty to defend or indemnify Walker & Zanger in the Underlying Action. (Complaint ¶ 12.) The first cause of action is for reimbursement of the amount expended by Walker & Zanger in the Underlying Action. (Complaint ¶¶ 15–18.) The second cause of action is for declaratory relief on Walker & Zanger's duty to defend. (Complaint ¶¶ 19–22.) The third cause of action is for declaratory relief on Walker & Zanger's duty to indemnify. (Complaint ¶¶ 23–26.) Travelers has moved for partial summary judgment, seeking a declaration it has no duty to defend.

## TRAVELERS' MOTION FOR SUMMARY JUDGMENT

### I. *Legal Standard Governing Summary Judgment Motions.*

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A

---

**2.** In support of its reply brief, Travelers submitted under seal the declaration of Vincent T. Marci, Director in the Major Case Unit of Travelers. Marci discusses the information Travelers received from Walker & Zanger and/or its defense counsel and retained experts. The declaration also attaches status reports Walker & Zanger's counsel provided to Marci. Walker & Zanger has objected to the declaration and argued it should be stricken because it contains attorney-client privileged information. Although the correspondence is privileged, Travelers has not waived the privilege by submitting it to the Court under seal in connection with this motion. Accordingly, Walker & Zanger's request to strike the letters attached to the Marci declaration is **DENIED.**

fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.1989). Rather, "the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885, 110 S.Ct. 3177 (*quoting Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

In contrast, when the moving party bears the burden of proof at trial, it cannot obtain summary judgment unless it presents evidence so compelling that no rational jury would fail to award judgment for the moving party. *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the non-

moving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The United States Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Id.* at 256, 106 S.Ct. 2505. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. *Id.* The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## II. *Applicable Law Regarding the Duty to Defend.*

■ The duty to defend arises immediately upon the insured's tender of a de-

fense of a third party lawsuit to the insurer. *Foster–Gardner, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA.,* 18 Cal.4th 857, 886, 77 Cal.Rptr.2d 107, 959 P.2d 265 (1998); *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). An insurance carrier has a duty to defend its insured when a suit against the insured " *'potentially'* seeks damages within the coverage of the policy." *Truck Ins. Exch. v. Superior Court (Cherng),* 51 Cal.App.4th 985, 993, 59 Cal.Rptr.2d 529 (1996) (*quoting Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)); *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.,* 68 Cal.App.4th 1030, 1036, 80 Cal.Rptr.2d 688 (1998); *El–Com Hardware, Inc. v. Fireman's Fund Ins. Co.,* 92 Cal.App.4th 205, 212, 111 Cal.Rptr.2d 670 (2001). Thus, the duty to defend is broader than the duty to indemnify, as an insurer may owe a duty to defend even though no damages are ultimately awarded against insured. *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *Montgomery Ward & Co. v. Imperial Cas. & Indem. Co.,* 81 Cal.App.4th 356, 373, 97 Cal.Rptr.2d 44 (2000). In a "mixed" action against an insured, where some claims are covered or potentially covered by the policy and others are not, an insurer must defend against all the claims. *Buss v. Superior Court,* 16 Cal.4th 35, 49, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997); *County of San Bernardino v. Pacific Indem. Co.,* 56 Cal.App.4th 666, 689, 65 Cal.Rptr.2d 657 (1997). The rationale for this rule was stated in *Buss:* "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely." *Buss,* 16 Cal.4th at 49, 65 Cal.Rptr.2d 366, 939 P.2d 766 (internal citation omitted).

█ Whether an insurer owes a defense depends upon the terms of the policy, the allegations of the third party's complaint against the insured, and all facts extrinsic to the complaint that are known to the insurer. *Montrose,* 6 Cal.4th at 295–96, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *El–Com Hardware,* 92 Cal.App.4th at 212, 218, 111 Cal.Rptr.2d 670. An insurer's duty to defend is judged upon the "facts known by the insurer at the inception of a third party lawsuit." *Montrose,* 6 Cal.4th. at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (internal quotations omitted); *El–Com Hardware,* 92 Cal.App.4th at 212, 218, 111 Cal.Rptr.2d 670. Moreover, regardless of the allegations in the complaint, no duty to defend is owed where undisputed facts, extrinsic to the complaint, conclusively eliminate the potential for coverage under the policy. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995).

██ Once the duty to defend arises, it continues "until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Montrose Chem.,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (internal citation omitted); *El–Com Hardware,* 92 Cal.App.4th at 213, 111 Cal.Rptr.2d 670; *Truck Ins.,* 51 Cal.App.4th at 993, 59 Cal.Rptr.2d 529. Uncertainty as to whether the facts give rise to the duty to defend must be resolved in the insured's favor. *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993); *El–Com Hardware,* 92 Cal.App.4th at 213, 111 Cal.Rptr.2d 670; *Wausau Underwriters,* 68 Cal.App.4th at 1037–38, 80 Cal.Rptr.2d 688. A potential for coverage, however, cannot be based on an unresolved dispute concerning policy interpretation or other purely legal ques-

tions that are ultimately resolved in favor of the insurer. *Waller*, 11 Cal.4th at 25–26, 44 Cal.Rptr.2d 370, 900 P.2d 619. Further, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1114, 44 Cal.Rptr.2d 272 (1995); *Hurley Const. Co. v. State Farm Fire & Cas. Co.*, 10 Cal.App.4th 533, 538, 12 Cal.Rptr.2d 629 (1992).

### III. *Whether Travelers Owes Walker & Zanger a Duty to Defend.*

Walker & Zanger argues in part that Travelers owes it a duty to defend because Travelers initially agreed to defend Walker & Zanger in the underlying litigation, expressly acknowledging and agreeing that "certain of the alleged claims could be an 'advertising injury offense under Coverage B of the policy.'" (Flynn Decl.Exh. A at 1.) Travelers further explained that its decision to defend Walker & Zanger was based on: (1) Walker & Zanger's alleged misappropriation of the name "Hebron Yellow" from Dunhill (a stone supplier) which had rights to the name; (2) some of the allegations may constitute "misappropriation of advertising ideas and style of doing business" offense; and (3) Walker & Zanger's alleged advertisement that it would use "Hebron Yellow" for the project. Walker & Zanger's argument is unpersuasive.

In *Truck Ins.*, the California appellate court noted that where there is a question whether the duty to defend exists, an insurer can pursue three choices. *Truck Ins.*, 51 Cal.App.4th at 993, 59 Cal. Rptr.2d 529. First, the insurer can accept the defense without raising any objection to coverage. *Id.* "By doing so, the insurer waives its right to contest coverage at a later date." *Id.* Second, the insurer can refuse to furnish a defense, but risks control over the defense of the action, may be bound by any issues litigated in the underlying action, and may also be sued for breach of contract and breach of the covenant of good faith and fair dealing. *Id.* at 993–94, 59 Cal.Rptr.2d 529. Third, the insurer can defend the action under a reservation of rights, and while the action is pending, file a declaratory relief action to obtain a declaration that no duty to defend or indemnify exists, which would allow it to withdraw from the defense without subjecting the carrier to a claim of breach of contract or bad faith. *Id.* at 994, 59 Cal. Rptr.2d 529.

Here, Travelers accepted Walker & Zanger's tender "subject to further investigation and *under a full reservation of rights.*" (Flynn Decl.Exh. A at 1.) Accordingly, Travelers has invoked the third option allowed by *Truck Ins.* In so doing, Travelers is not bound to continue to provide coverage but can properly seek a declaration it does not owe a duty to defend.

Travelers argues it does not owe a duty to defend because the policy does not provide coverage for property damage claims arising out of the allegedly defective stone or representations made by Walker & Zanger regarding the fitness or use of such stone. In addition, Travelers contends that the Underlying action does not include a claim for "advertising injury" because the Underlying Action does not contain any allegations of advertising activity by Walker & Zanger, that such advertising caused the plaintiff's damages, or that Walker & Zanger committed an "advertising injury" offense. In addition,

Travelers contends that three different exclusions would bar coverage even if Walker & Zanger had been sued for an advertising injury claim.

Walker & Zanger does not dispute that if the injuries claimed in the Underlying Action are characterized as property damage, there would not be coverage because of the products exclusion bar in the policies. Rather, whether Travelers owes Walker & Zanger a duty to defend turns on whether Walker & Zanger caused a covered advertising injury.

The policies at issue provide coverage for an advertising injury "caused by an offense committed in the course of advertising [Walker & Zanger's] goods, products, or services." (Complaint Exh. A at 68.) The policy defines "advertising injury" as an injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

*Id.* at 73, 59 Cal.Rptr.2d 529.

In *Peerless Lighting Corp. v. American Motorists Ins. Co.,* 82 Cal. App.4th 995, 1009, 98 Cal.Rptr.2d 753 (2000), the California court of appeal stated that courts should apply a two-part test for determining whether an offense was committed "in the course of advertising." *Peerless,* 82 Cal.App.4th at 1009, 98 Cal. Rptr.2d 753. First, the court considers whether the promotion of the product or service at issue constitutes "advertising" within the meaning of the policy language. *Id.* The second step a court must look at is whether the "advertising activities" must have in some sense caused the "advertising injury." *Id.* Thus, coverage for advertising injuries requires each of the following elements: (1) Walker & Zanger must have been engaged in advertising activity; (2) the Underlying Action's allegations and facts must have conveyed a potential for liability for one of the insured offenses; and (3) there must be a causal connection between the injuries alleged in the Underlying Action and Walker & Zanger's advertising activity. *See Hameid v. National Fire Ins. of Hartford,* 94 Cal.App.4th 1155, 1161, 114 Cal.Rptr.2d 843 (2001).

What constitutes "advertising" is not defined in Travelers policy. However, California courts have noted that "[t]he generally accepted definition of 'advertise' as used in CGL policies is the act of calling public attention to one's product through widespread promotional activities." *El–Com Hardware,* 92 Cal.App.4th at 217, 111 Cal.Rptr.2d 670; *Peerless,* 82 Cal.App.4th at 1009, 98 Cal.Rptr.2d 753. One federal court in the Ninth Circuit, however, has adopted a broader definition, stating that "[a]dvertising activity must be examined in the context of the overall universe of customers to whom a communication may be addressed." *New Hampshire Ins. Co. v. Foxfire, Inc.,* 820 F.Supp. 489, 494 (N.D.Cal.1993). Thus, [w]here the audience may be small, but nonetheless comprises all or a significant number of a competitor's client base, the advertising activity requirement is met. The holding might be different where the target audience are customers of a large organization that markets to the general public or a

significant portion of it. But, where the business is one with a small customer base and that base, or a significant part of it, is the target audience, the reach is extensive enough to constitute advertising injury." *Id.*

One California Court of Appeal recently analyzed whether a plaintiff's activities constituted "advertising" using *Foxfire's* analytical framework. In *Hameid,* the plaintiff owned and operated a beauty salon named Salon T'Shea that was located near Bellezza Salon/Day Spa, owned by KWP, Inc. *Hameid,* 94 Cal.App.4th at 1160, 114 Cal.Rptr.2d 843. Bellezza hired Doreen Howard in 1992 and Heather Billington in 1996. *Id.* When Howard and Billington started working for Bellezza, neither had any clients. *Id.* In early 1999, they left Bellezza and rented work stations from the plaintiff. *Id.* KWP sued plaintiff, Howard, and Billington for misappropriation of trade secrets, unfair competition, breach of contract, breach of the implied covenant of good faith and fair dealing, and interference with prospective economic advantage, seeking damages and an injunction. *Id.* KWP alleged Howard and Billington misappropriated customer lists, price lists, and pricing policies to solicit KWP's customers and undercut its prices, all for plaintiff's benefit. *Id.* Plaintiff's insurer denied coverage, in relevant part finding that plaintiff was not covered under the policy's "advertising injury" provision. *Id.* On appeal, the California Court of Appeal found that plaintiff's wrongful conduct constituted "advertising" under the policy. *Id.* at 1162, 114 Cal.Rptr.2d 843. In particular, the court found that plaintiff and its employees solicited customers by advertising the Pennysaver, sending mailers, and telephoning Howard and Billington's clients from Bellezza. *Id.* The court considered these activities, pursuant to *Foxfire,* considering that plaintiff was a new business with a small overall audience and customer base, and found plaintiff's promotional activities to "fit neatly into the commonly understood meaning of advertising, *i.e.,* the act of calling public attention to one's product through widespread promotional activities." *Id.* (internal quotations and alterations omitted).

One California appellate court has concluded that under both of these definitions, "solicitation of a *single* customer with a tailor-made product in the course of a competitive bidding process" does not amount to advertising. *Peerless,* 82 Cal.App.4th at 1012, 98 Cal.Rptr.2d 753. There, Peerless and its competitor, Columbia Lighting, Inc. ("Columbia") sought to supply overhead lighting fixtures for a General Motors ("GM") facility expansion in Michigan. *Id.* at 1001, 98 Cal.Rptr.2d 753. GM had used Columbia's "indirect luminairs" in an earlier phase of the project, and Columbia submitted a bid to have the indirect luminairs used in the expansion facility also. *Id.* Peerless submitted a bid to have its own Envision brand lighting fixture used in the GM expansion facility, but GM rejected it. *Id.* Peerless then modified the Envision fixture and sent a sample of the modified version to GM. *Id.* GM ultimately awarded Peerless the supply contract. *Id.* After Peerless had sent the modified Envision fixture sample to GM but before Peerless was awarded the contract, Columbia's counsel wrote a letter to Peerless giving notice that the modified Envision fixture infringed on Columbia's patents and trade dress. *Id.* Columbia later sued Peerless in federal court for patent infringement and trade dress violations under the Lanham Act. *Id.* at 1002, 98 Cal.Rptr.2d 753. Peerless tendered its defense to its insurer, who ultimately rejected the tender. *Id.* at

1003, 98 Cal.Rptr.2d 753. Peerless subsequently filed a declaratory relief action to establish its right to a defense. *Id.* In holding there was no coverage, the California Court of Appeal reasoned that a layperson would not read the term "advertising" as including solicitation of a single customer in the manner that occurred in the case. *Peerless,* 82 Cal.App.4th at 1012, 98 Cal.Rptr.2d 753. Second, the court found that "a definition that would stretch 'advertising' to include solicitation of a single customer as it occurred in this case is not within the insured's objectively reasonable expectations." *Id.* In so holding, the court stated that " 'as a matter of common sense' a reasonable insured would not expect 'advertising injury' coverage to extend to solicitation of a *single* customer with a tailor-made product in the course of a competitive bidding process, as occurred in this case." *Id.* at 1013, 98 Cal.Rptr.2d 753.

The parties dispute whether Walker & Zanger's activities constitute advertising, or are more similar to one-on-one solicitation of a customer as in *Peerless.* Walker & Zanger contends it engaged in advertising activity and cites in support the declaration of Maureen McGrath, Walker & Zanger's Director of Purchasing. (McGrath Decl. ¶ 1.) Much of her declaration discusses the general activities of Walker & Zanger's architecture department and sales personnel and Walker & Zanger's general intent to advertise and promote its products such as the Hebron Yellow stone. (*See* McGrath Decl. ¶¶ 2–5, 10–11; *see also* McGrath Decl. ¶ 6 ("Walker Zanger intended to advertise and market the stone referred to as 'Hebron Yellow' to all of its potential customers and for any projects where the stone may be of interest, not merely for the San Diego Airport project. In fact, I traveled to Israel in approximately February, 1996, to purchase the stone referred to as 'Hebron Yellow' for use as stone flooring at a new Cheesecake Factory in Florida."); *id* ¶ 8 ("Consistent with its general advertising practice, at the time that stone flooring was being selected for use at the San Diego Airport project, Walker Zanger sales personnel were showing the stone referred to as 'Hebron Yellow' to various architects."); *id.* ¶ 15 ("Walker Zanger's advertising activities for provision of stone flooring for commercial projects, as described above, are designed to and do in fact reach all potential customers of Walker Zanger's products. Walker Zanger believes that advertising stone flooring for use in commercial projects through the use of television and newspapers would be a waste of resources for Walker Zanger. Walker Zanger's advertising activity is targeted to a particular market segment because Walker Zanger considers it more effective and efficient than advertisement through mass media to non-customers. All of Walker Zanger's competitors advertise in like fashion. To the best of my knowledge, none of Walker Zanger's competitors advertise stone flooring products for use in commercial projects through the use of mass media.")). While this information is relevant to Walker & Zanger's general advertising activities, whether liability is triggered under the Travelers' policy turns on Walker & Zanger's activities in connection with the San Diego Airport project, as only advertising activities that cause a covered advertising injury impose on Travelers a duty to defend. *See Peerless,* 82 Cal.App.4th at 1009, 98 Cal. Rptr.2d 753.

With respect to Walker & Zanger's activities regarding the San Diego Airport project, McGrath's declaration is conclusory. For example, she states, "Walker Zanger advertised and promoted a Jerusa-

lem limestone as 'Hebron Yellow.' Walker Zanger was concerned at the time of promotion that other stone suppliers would supply this stone to potential customers." (McGrath Decl. ¶ 6.) But a careful review of Walker & Zanger's relevant activities regarding its promotion of the Hebron Yellow stone reveals they were part of Walker & Zanger's efforts to work on the Airport Project. Although McGrath characterizes these activities as "advertising," they are more parallel to the *Peerless* plaintiff's solicitation efforts. In particular, McGrath states that "I recall that considerable efforts were made by Walker Zanger to continue to advertise the stone to general contractors and subcontractors who potentially would be involved with the selection, procurement, and installation of stone flooring at the Airport. Walker Zanger did not want to be 'cut out' of the Airport project because a subcontractor submitted a bid with a different stone or attempted to obtain the stone directly from the quarry which was the source of the stone." (McGrath Decl. ¶ 12.) Walker & Zanger engaged in these "advertising" efforts because "many of the general contractors and subcontractors were not familiar with the 'Hebron Yellow' stone since it was a new product being supplied by Walker Zanger. At a minimum I recall that there were telephone calls to and facsimiles sent to dozens of potential customers to advertise 'Hebron Yellow' and provide information about Walker Zanger and its products." *Id.* McGrath further states that Walker & Zanger "sent out over a dozen proposals to subcontractors which advertised Walker Zanger's stone." (McGrath Decl. ¶ 13 and Exh. A thereto.) McGrath also discusses Walker & Zanger sales personnel's weekly discussions with Gensler. (McGrath Decl. ¶ 8.) McGrath states that Gensler needed to select a stone for the flooring of the new terminal and so Walker & Zanger "advertised the stone referred to as 'Hebron Yellow' to Gensler for use in the project," and that Gensler then "advertised the 'Hebron Yellow' stone to the Port." (McGrath Decl. ¶¶ 8–9.)

■ The evidence before the Court shows that CMMC, Gensler, and ultimately the Port did not choose to contract with Walker & Zanger to use the Hebron Yellow stone as a result of Walker & Zanger's general advertising activities described in the McGrath declaration. Rather, the contract resulted from Walker & Zanger's specific efforts to supply stone for the Airport Project. The Court agrees with Travelers that Walker & Zanger's discussions with architects and subcontractors about the Hebron Yellow stone and listing the stone in the project specifications is not the kind of activity that comports with the average layperson's conception of the word "advertising." Rather, these efforts were proposals to do business together with those architects and subcontractors, which " 'do[ ] not conform to ordinary notions of calling to the attention of the public the merits of a product.' " *Peerless,* 82 Cal.App.4th at 1010, 98 Cal.Rptr.2d 753 (*quoting Smartfoods Inc. v. Northbrook Property & Cas. Co.,* 35 Mass.App.Ct. 239, 244, 618 N.E.2d 1365 (1993)). That Walker & Zanger may not use mass media to advertise its products and services is irrelevant. The context in which Walker & Zanger proposed the use of Hebron Yellow is dispositive. Here, Walker & Zanger was bidding to be one of the subcontractors involved in the Airport Project. As alleged in the Underlying Action's complaint, Walker & Zanger presented Hebron Yellow as a stone that met the Port's specifications and the Port's injuries arose

because that stone did not in fact meet the Port's specifications. Thus, this situation is similar to the facts presented in *Peerless*. That Walker & Zanger submitted its proposal to use the Hebron Yellow to several different contractors and subcontractors does not convert these efforts into "advertising." Like the plaintiff in *Peerless*, Walker & Zanger was engaged in a competitive bidding process in which it offered a specially selected product for a particular project. Further, Walker & Zanger presents no authority indicating that the Port's publication of the bid package constitutes "adverting" or that the injuries alleged in the Underlying Action "arose" from advertising activities.

Accordingly, the alleged injuries did not occur in the course of "advertising activities" and Travelers does not owe a duty to defend.

### IV. *Walker & Zanger's Rule 56(f) Motion.*

Walker & Zanger requests that if the Court does not deny Travelers' motion for summary judgment that it allow time for Walker & Zanger to conduct discovery into four areas. (Herling Decl. ¶ 2.) First, Walker & Zanger seeks time to conduct discovery into the handling of Walker & Zanger's claim by Travelers. (Herling Decl. ¶ 2(a).) Second, Walker & Zanger seeks discovery into the accuracy and completeness of the policy lodged by Travelers in connection with the motion for partial summary judgment because Walker & Zanger believes that the copy of the Products Completed Operations Hazard exclusion may be erroneous. *Id.* ¶ 2(b). Third, Walker & Zanger wants discovery into the drafting of the policy. *Id.* ¶ 2(c). Finally, Walker & Zanger requests discovery into the scope of the advertising of Hebron

Yellow at issue in the Underlying Action by others in connection with the Airport Project. *Id.* ¶ 2(d).

Rule 56(f) allows the court to deny or continue a motion for summary judgment when the party opposing the motion demonstrates a need for further discovery to obtain facts essential to its opposition. Fed.R.Civ.P. 56(f); *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548. The purpose of this rule is so an opposing party is not railroaded by a premature motion for summary judgment. *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548. A party seeking a continuance must "make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998) (internal quotations omitted); *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 888 (9th Cir.1996). The moving party, therefore, " 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.' " *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir.1996) (*quoting Securities & Exchange Common v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980)).

Specifically, a party seeking to continue a motion for summary judgment must (1) set forth in affidavit form the specific facts that it hopes to elicit from further discovery, (2) show that those facts exist, and (3) explain why those facts are essential to resisting the motion for summary judgment. *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir.), *cert. denied*, 525 U.S. 822, 119 S.Ct. 64, 142 L.Ed.2d 51 (1998). The Court may exercise its discretion to deny a Rule 56(f) motion when the moving party fails to show that it exercised reasonable diligence during discovery. *Conkle v. Jeong*, 73

F.3d 909, 914 (9th Cir.1995); *Mackey v. Pioneer Nat. Bank,* 867 F.2d 520, 523–24 (9th Cir.1989).

■ Here, the Court finds that denial of Travelers' motion or continuance is not warranted under Rule 56(f). Discovery into Travelers' handling of Walker & Zanger's claim and the accuracy and completeness of the policy is irrelevant in light of the Court's finding that Walker & Zanger did not engage in advertising. Further, Walker & Zanger has not presented authority indicating how discovery into the third and fourth areas requested would preclude summary judgment, or that explain why any such evidence—which was not presented to Travelers so it could determine its duty to defend—is essential to resisting Travelers' motion for partial summary judgment. Accordingly, Walker & Zanger's Rule 56(f) motion is **DENIED.**

### WALKER & ZANGER'S MOTION TO STAY

In connection with its motion to dismiss, Walker & Zanger also requested the Court stay this action, arguing that proceeding with this action will greatly prejudice its defense of the Underlying Action. Because the Court has found that Travelers does not owe a duty to defend the Underlying Action, this case should not be stayed. The only remaining issue is the amount, if any, of reimbursement Travelers is entitled to for its defense of Walker & Zanger. Discovery and motions on this issue will have no detrimental impact to Walker & Zanger in defending against the merits of the Underlying Action. Accordingly, Walker & Zanger's motion to stay is **DENIED.**

### CONCLUSION

Having carefully considered the parties' briefs and argument of counsel, the record,

applicable law, and good cause appearing, **IT IS HEREBY ORDERED:**

1. Travelers' request for judicial notice of the pleadings filed in the Underlying Action is **GRANTED** insofar as the Court has relied on those documents.

2. Walker & Zanger's request to strike the letters attached to the Marci declaration is **DENIED.**

3. For the reasons stated on the record, Walker & Zanger's motion to dismiss is **DENIED.**

4. For the reasons stated on the record, Walker & Zanger's cross-motion for partial summary judgment is **STRICKEN.**

5. Travelers' motion for partial summary judgment is **GRANTED.**

6. Walker & Zanger's motion to stay is **DENIED.**

**IT IS SO ORDERED.**

### MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

This insurance dispute concerns the scope of the "advertising injury" coverage in the commercial general liability ("CGL") insurance contract provided by plaintiff Travelers Indemnity Company of Connecticut to defendant Walker & Zanger, Inc. Earlier this year, the court concluded that the policy did not cover defendant's claim, thus, plaintiff had no duty to defend or indemnify Walker & Zanger in the underlying action. Defendant asks the court to reconsider that summary judgment ruling in light of new evidence. The court declined to hear oral argument and has decided the motion on the written briefs.

### BACKGROUND

The San Diego Unified Port District ("the Port") hired general contractors, ar-

chitects, designers, suppliers, and other professionals to· construct a new airport terminal. Walker & Zanger was hired to supply the stone to complete a floor in the terminal. After consulting with the designers to identify the desired product, Walker & Zanger contracted with Cleveland Marble and Mosaic Company ("CMMC") to procure and supply the specified stone.

After the terminal opened, the Port filed a construction defect lawsuit in state court against the participants in the project, including Walker & Zanger. The Port's claims against Walker & Zanger included negligent misrepresentation, breach of warranty, and fraud based on promises made about the quality, character, and source of the stone. For example, the Port alleged that the design team represented that the stone floor would last the entire life of the project; however, the floor broke, deteriorated, pitted, and discolored shortly after the terminal opened. The complaint further alleged that the design team represented that the stone would be "Hebron Yellow by Walker & Zanger," when in fact, there was no such product known in the industry. The stone installed in the terminal was mislabeled. It was actually "Halila Gold," yet Walker & Zanger had no prior experience with that product or the quarry that produced it.

Subject to a reservation of rights, Travelers agreed to defend Walker & Zanger in the underlying action because certain claims could qualify as an "advertising injury" offense under the insurance policy. The state court stayed discovery to allow the parties time to discuss settlement.

In the interim, Travelers filed this federal action to obtain declaratory relief that it had no duty to defend or indemnify Walker & Zanger. Travelers moved for partial summary judgment on that issue.

The summary judgment motion required the court to determine whether the circumstances in which Walker & Zanger promoted the stone fell within the general concept of "advertising," even though the customer base was small and selective, *El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal.App.4th 205, 217, 111 Cal. Rptr.2d 670 (2001); or whether Walker & Zanger's activities were more narrowly directed to a particular project in a competitive bidding context, *Peerless Lighting Corp. v. American Motorists Ins. Co.*, 82 Cal.App.4th 995, 1009, 98 Cal.Rptr.2d 753 (2000).

Walker & Zanger primarily relied on the declaration their Director of Purchasing, Maureen McGrath, to oppose the summary judgment motion. The court discounted those parts of McGrath's declaration that described Walker & Zanger's general advertising activities, and instead focused on McGrath's description of Walker & Zanger's specific activities in connection with the airport project. Order at 12–13. Even those portions of McGrath's declaration did not provide factual support for Walker & Zanger's legal position, however, because she used conclusory descriptive language. *Id.* at 13 (quoting McGrath Decl. ¶ 6 that "Walker Zanger *advertised and promoted* a Jerusalem limestone as 'Hebron Yellow.' ") (emphasis added). Moreover, the court noted that Walker & Zanger's promotion activities were all part of their efforts to be selected to work on the airport project. *Id.* at 13–14. The "solicitation of a *single* customer with a tailor-made product in the course of a competitive bidding process" does not amount to advertising. *Peerless*, 82 Cal.App.4th at 1012–13, 98 Cal.Rptr.2d 753. The court

concluded that, within the factual context of the transaction, the activities were analogous to those described in the *Peerless* case. "[A] definition that would stretch 'advertising' to include solicitation of a single customer as it occurred in this case is not within the insured's objectively reasonable expectations." *Id.* Thus, the court held that:

> The evidence before the Court shows that CMMC, Gensler, and ultimately the Port, did not choose to contract with Walker & Zanger to use the Hebron Yellow stone as a result of Walker & Zanger's general advertising activities described in the McGrath declaration. Rather, the contract resulted from Walker & Zanger's specific efforts to supply stone for the Airport Project. The Court agrees with Travelers that Walker & Zanger's discussions with architects and subcontractors about the Hebron Yellow stone and listing the stone in the project specifications is not the kind of activity that comports with the average layperson's conception of the word "advertising." Rather, these efforts were proposals to do business together with those architects and subcontractors, which " 'do[ ] not conform to ordinary notions of calling to the attention of the public the merits of a product.' " *Peerless*, 82 Cal.App.4th at 1010, 98 Cal.Rptr.2d 753 (*quoting Smartfoods Inc. v. Northbrook Property & Cas. Co.*, 35 Mass.App.Ct. 239, 244, 618 N.E.2d 1365 (1993)). That Walker & Zanger may not use mass media to advertise its products and services is irrelevant. The context in which Walker & Zanger proposed the use of Hebron Yellow is dispositive. Here, Walker & Zanger was bidding to be one of the subcontractors involved in the Airport Project. As alleged in the Underlying Action's complaint, Walker & Zanger presented Hebron Yellow as a stone that met the Port's specifications and the Port's injuries arose because that stone did not in fact meet the Port's specifications. Thus, this situation is similar to the facts presented in *Peerless*. That Walker & Zanger submitted its proposal to use the Hebron Yellow to several different contractors and subcontractors does not convert these efforts into "advertising." Like the plaintiff in *Peerless*, Walker & Zanger was engaged in a competitive bidding process in which it offered a specially selected product for a particular project. Further, Walker & Zanger presents no authority indicating that the Port's Publication of the bid package constitutes "advertising" or that the injuries alleged in the Underlying Action "arose" from advertising activities.

Order at 14.

After the summary judgment hearing, Walker & Zanger returned to state court and requested permission to serve special interrogatories on certain parties. The state court agreed to lift the stay on discovery for that purpose. Based on the interrogatory responses from two parties the underlying action, Walker & Zanger asks this court to reconsider its order.

### DISCUSSION

Walker & Zanger argues that the court should reconsider its summary judgment decision because new evidence demonstrates that Traveler's motion was granted prematurely. Fed.R.Civ.P. 60(b); *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). The court did not have the benefit of the statements from the claimants in the underlying litigation at the time of the summary judgment mo-

tion because the state court had stayed discovery.

The interrogatory asked whether Walker & Zanger had caused damage "as a result of its advertising of stone tile flooring." (Sutro Decl.Ex. B at 2). CMMC, the company that supplied the stone to Walker & Zanger, responded in the affirmative, and stated that Walker & Zanger had "submitted multiple bids and otherwise distributed advertising to numerous parties in this dispute both before and after the bidding of the product." (Sutro Decl.Ex. C at 2). CMMC stated that "this advertising literature" contained false and misleading information, and misappropriated "advertising ideas" and the trade name from the company that actually produced hebron yellow stone. (*Id.* at 2–3).

The Port responded that "Yes, the Port contends that Walker Zanger caused the Port to suffer damaged as a result of Walker Zanger's advertising of stone tile flooring specified as 'Hebron Yellow by Walker Zanger.' " (Sutro Decl.Ex. D at 2). The Port goes on to describe the false "advertising" that Walker & Zanger disseminated about the stone. (*Id.* at 2–3). For example, the Port stated that "Walker Zanger further used the Hebron Yellow title to actively market and solicit sales of the Antique Gold stone to the Port and others. It condoned and endorsed the dissemination of advertising material and brochures that not only disguised the true title and source of the stone product it titled Hebron Yellow, but that also misappropriated the title to the true Hebron Yellow to market the Antique Gold stone." (*Id.* at 3–4).

Walker & Zanger believes that these responses go to the heart of the issue because they show that there was a potential for coverage under the advertising injury provision. Both CMMC and the Port characterize Walker & Zanger's allegedly offending conduct as "advertising," thus, the court should reconsider its ruling.

The court is not persuaded by Walker & Zanger's argument. Like the McGrath declaration, the interrogatory responses provide conclusory descriptions of the "advertising" activities conducted. Both CMMC and the Port label the communications about the stone as "advertising." These labels do not provide factual support for the critical determination of whether the activities fall within the *Peerless* definition of the solicitation of a single customer, or within the broad, generally accepted definition of "calling public attention to one's product through widespread promotional activities" set forth in *El–Com Hardware*. More importantly, as with the prior McGrath declaration, the interrogatory responses describe activities Walker & Zanger took to win the airport contract. The activities described by CMMC and the Port relate to Walker & Zanger's attempts to persuade the decision-makers on the airport project to hire it as the stone supplier. For example, CMMC stated that:

> *During the selection of natural stone to be used at the San Diego International Airport,* Walker & Zanger [distributed information purportedly describing the suitability and characteristics of 'hebron yellow' stone] *to the architect, owner, construction manager, general contractor, CLEVELAND MARBLE,* and multiple other contractors in the construction industry.... As a result of Walker & Zanger's false and misleading advertising, *CLEVELAND's bid* was based upon the hebron yellow product manufactured by Dunhill.

(Sutro Decl.Ex. C at 2). These facts do not remove the activities from the context

of the solicitation of a single customer in a competitive bidding situation. *Peerless,* 82 Cal.App.4th at 1012, 98 Cal.Rptr.2d 753.

The response by CMMC contains some broad language that could lead one to believe that Walker & Zanger disseminated the information to customers who were not involved in the airport project. For example, CMMC stated that Walker & Zanger distributed the information to "multiple other contractors in the construction industry." (Sutro Decl.Ex. C at 2). This, however, is similar to the language that McGrath used to describe the efforts Walker & Zanger took to notify "subcontractors who potentially would be involved with the selection, procurement, and installation of stone flooring at the Airport." Order at 13 (quoting McGrath Decl. ¶ 12). Walker & Zanger, not CMMC, is in the best position to show the customers who received information about the stone; yet Walker & Zanger has not presented any evidence that it sent information to any entity that was not otherwise involved in the airport project.

For these reasons, the new evidence is merely cumulative to the evidence submitted in Walker & Zanger's original opposition papers. For the same reasons set forth in the court's prior order, the facts demonstrate that the insurance policy does not cover the activities Walker & Zanger undertook to win the airport construction project.

### CONCLUSION

Having carefully considered the parties' briefs, the record, and applicable law; and good cause appearing, IT IS HEREBY ORDERED:

1. Defendant's motion for reconsideration is **DENIED** [# 50].

2. Defendant's objection to and motion to strike the opposition is **DENIED** [# 62].

**IT IS SO ORDERED.**